UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEORGE MORGAN,

        Petitioner,

v.                                  CASE NO. 08-15069
                                    HONORABLE DENISE PAGE HOOD
JEFFREY WOODS,             MAGISTRATE JUDGE VIRGINIA M. MORGAN

        Respondent.
_____/

## OPINION AND ORDER DENYING THE HABEAS CORPUS PETITION AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

Petitioner George Morgan has filed a *pro se* application for the writ of habeas corpus pursuant to 28 U.S.C. § 2254. The habeas petition challenges Petitioner's convictions for second-degree murder, assault with a dangerous weapon (felonious assault), and possession of a firearm during the commission of a felony (felony firearm). Petitioner alleges in his first and second claims that there was insufficient evidence to support his murder and assault convictions. Petitioner's third claim alleges that the trial court should have ascertained whether Petitioner wanted to waive his right to a jury trial after the court disclosed that it had read the transcript of the preliminary examination. In his fourth and final claim, Petitioner alleges that his appellate attorney was ineffective for failing to raise Petitioner's third claim in the appeal of right. The Court has determined from a review of the record that the evidence was sufficient to support Petitioner's convictions, that Petitioner's waiver of a jury trial was voluntary and intelligent, and that appellate counsel was not ineffective for failing to raise Petitioner's third claim regarding the voluntariness of

his waiver of a jury trial in the appeal of right. Consequently, Petitioner is not entitled to habeas corpus relief, and his petition will be denied.

## I. BACKGROUND

### A. The Facts

Petitioner was charged in Wayne County, Michigan with first-degree (felony and premeditated) murder, kidnaping, felonious assault, and felony firearm. The charges arose from the fatal shooting of Petitioner's girlfriend, Leona Love, and the pointing of a gun at Ms. Love's friend, LaTonya Champion. Petitioner waived his right to a jury trial and was tried before a Wayne County circuit judge.

Ms. Champion testified at trial that she and Ms. Love went to a wedding reception and to a mutual friend's house on the night of March 28-29, 1998. They returned to Ms. Champion's home in Highland Park about 2:00 a.m. on March 29, 1998. As they got out of the car, Petitioner jumped from Ms. Champion's porch onto the top of her car. When she screamed, Petitioner turned toward her, pointed a gun at her head, and told her to "shut up." Petitioner then grabbed Ms. Love by the hair, pointed a gun at her head, and dragged her around the back of the car. Petitioner threatened to kill Ms. Love if Ms. Champion called the police. Ms. Champion did not believe Petitioner's threat. She ran in the house and called the police as Petitioner was pulling Ms. Love across the street. She hung up on the police and then went to the home of Ms. Love's mother. The two of them proceeded to Petitioner's home.

Ruby Love, who was Leona Love's mother, testified that she called the 911 operator after Ms. Champion called her and told her that Petitioner had taken Ms. Love from her house at gunpoint. Mrs. Love subsequently called Petitioner's home and asked to speak

with her daughter. Petitioner answered her call and said, "She's dead." Ms. Champion then arrived at Mrs. Love's home, and the two of them went to Petitioner's house where an officer hinted that Mrs. Love's daughter was dead.

Petitioner's sister, Robin Morgan, testified that Petitioner called her about 2:30 a.m. on March 29, 1998, and asked her to call an ambulance and get help for Ms. Love because he thought he had shot her. Ms. Morgan called an ambulance and the 911 operator and proceeded to Petitioner's home. She waited for the police to arrive and directed them to Petitioner's house where she identified the victim. Ms. Morgan claimed that Petitioner had a drinking problem and that he was abusive toward women when he was under the influence of alcohol.

Police Officer Charles Richey was dispatched to 20467 Charest Street in Detroit on March 29, 1998. He discovered a woman lying on the floor with a gunshot wound to her head. The medical examiner's report indicated that Ms. Love died from a single, close-range gunshot to her forehead and that the manner of death was homicide. Superficial blunt force injuries were the apparent result of a struggle before the fatal gunshot wound was inflicted.

Petitioner's mother, Ruthie Morgan, testified that Petitioner came to her house on Schroeder Street in Detroit at approximately 3:00 a.m. on March 29, 1998. Petitioner informed Mrs. Morgan and his sister that he thought he had killed his girlfriend, but that he did not mean to shoot her. Petitioner then went down the street to his brother's house. When Petitioner and his brother returned to Mrs. Morgan's house, family members tried to convince Petitioner to put down his gun. The family called the police, and officers arrived as Petitioner and his brother were standing in the dining room.

3

Police Officer Daniel Cretu testified that he was sent to 525 Schroeder Street at about 3:30 a.m. on March 29, 1998. The nature of the police run was suicide. Officer Cretu found Petitioner and family members at the house. Petitioner identified himself and stated that he had a loaded gun in his pocket. After Officer Cretu retrieved the gun from Petitioner's pocket, Petitioner stated that he had shot his girlfriend. On the way to the police station, Petitioner informed Officer Cretu and another officer that he did not mean to shoot his girlfriend and that the weapon had accidentally fired when he and the victim got into a verbal argument on Charest Street. Petitioner stated that he had tried to revive Ms. Love after the gun went off, but that she was unresponsive. He then drove to his mother's house on Schroeder Street where Officer Cretu found him. Officer Cretu smelled alcohol on Petitioner, but he did not think that Petitioner was drunk.

Police Officer David Moore took a statement from Petitioner at police headquarters. Petitioner explained to Officer Moore that he and Ms. Love had been living together, but that they were having a problem with their relationship. He wanted her to make something of her life and she could not understand that. They had argued one day before he left for work. When he arrived home on Saturday morning, March 28, she was gone. He found a note on the table explaining why she had left him. He was upset about her leaving and figured that, if he could talk with her, they would get back together. He went to Ms. Champion's house about 2:00 a.m. because he knew Ms. Love would be there. He parked down the street from the house, knowing that the two women would not answer the door if they looked out the window and saw his car. As he was about to knock on the door, Ms. Love and Ms. Champion drove up in Ms. Champion's car. He jumped off the porch onto the hood of Ms. Champion's car, pointed a pistol at Ms. Love, and told her that she was

4

going with him. He walked her down the street to his car and drove to his house. He still had the gun in his hand, and Ms. Love followed him into the house. Once inside, he grabbed Ms. Love by the collar while still holding the gun. Ms. Love resisted and stumbled to the floor. He got on top of her, and the two of them struggled over the gun. As they struggled, the telephone rang and the gun fired. The telephone call was from Ms. Love's mother. He told her what had happened and apologized for accidentally shooting Ms. Love. He then went to his mother's house and admitted that he had shot and possibly killed Ms. Love. He called two friends and asked his mother to contact his sisters and brothers. Shortly afterward, the police arrived and ordered him to hand over the gun.

Lieutenant Samuel Carter also interviewed Petitioner. Petitioner informed Lieutenant Carter that he took a gun to Ms. Champion's house because there were men there, and he was protecting himself. He claimed that he took Ms. Love from the house at gunpoint because he wanted her to do what he told her to do, and he did not want any trouble. He also admitted that he had straddled Ms. Love after she fell to the floor in his house.

The only defense witness was Petitioner's brother, Robert Morgan, Jr., who testified that Petitioner came to his house about 2:30 or 3:00 a.m. on March 29, 1998, and announced that he had shot his girlfriend. Petitioner had a gun in his hand and stated that he did not mean to do it. They went to their mother's house where Petitioner was ranting and raving and claiming that he was going to jail for life and planned to kill himself. Robert told Petitioner not to kill himself, but he could not convince Petitioner to put down his gun. Meanwhile, their sister called the police, who took the gun from Petitioner upon their arrival. Mr. Morgan claimed that he could smell alcohol on Petitioner that night.

### B. The Trial, Sentence, and Appeals

5

On November 23, 1998, the trial court, sitting as trier of fact, acquitted Petitioner of kidnaping and first-degree murder, but found Petitioner guilty of: (1) second-degree murder, MICH. COMP. LAWS § 750.317, as a lesser-included offense to first-degree murder; (2) felonious assault, MICH. COMP. LAWS § 750.82; and (3) felony firearm, MICH. COMP. LAWS § 750.227b. The trial court sentenced Petitioner as a habitual offender to two years in prison for the felony firearm conviction, followed by concurrent terms of twenty-five to fifty years in prison for the murder conviction and two to four years in prison for the felonious assault conviction.

In an appeal of right, Petitioner challenged the sufficiency of the evidence supporting his murder and assault convictions. The Michigan Court of Appeals found no merit in the claims and affirmed Petitioner's convictions in an unpublished, *per curiam* opinion. *See People v. Morgan*, No. 217126 (Mich. Ct. App. Nov. 21, 2000). On June 26, 2001, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Morgan*, 464 Mich. 868; 631 N.W.2d 341 (2001) (table).

Petitioner subsequently filed a motion for relief from judgment in which he claimed that his waiver of a jury trial was defective and that his appellate attorney was ineffective for failing to raise the issue on appeal. The trial court rejected these claims and denied Petitioner's motion. Petitioner appealed the trial court's decision, but his appeal was untimely, and the Michigan Court of Appeals dismissed it for lack of jurisdiction. *See People v. Morgan*, No. 283234 (Mich. Ct. App. May 1, 2008). On November 25, 2008, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Morgan*, 482 Mich. 1063; 757 N.W.2d 464 (2008) (table).

**C. The Habeas Petition and Answer**

Petitioner filed his habeas corpus petition on December 8, 2008. His claims are: (1) his conviction for second-degree murder violates the constitutional right to be free from conviction in the absence of proof of guilt beyond a reasonable doubt; (2) his conviction for felonious assault violates the constitutional right to be free from conviction in the absence of proof of guilt beyond a reasonable doubt; (3) reversal is required where the judge, sitting as trier of fact, read the preliminary examination transcript and failed to address him personally to determine if he still wished to forego his right to a jury trial in light of the court's disclosure; and (4) his appellate attorney was constitutionally ineffective for failing to raise claim three in the appeal of right.

Respondent Jeffery Woods argues in an answer to the petition filed through counsel that Petitioner's third claim is procedurally defaulted and that Petitioner's other claims lack merit. A procedural default is not a jurisdictional limitation, *Pudelski v. Wilson*, 576 F.3d 595, 606 (6th Cir. 2009) (citing *Cain v. Redman*, 947 F.2d 817, 820 (6th Cir. 1991)), *cert. denied*, __ U.S. __, 130 S. Ct. 3274 (2010), and the Court finds it more efficient to address the merits of Petitioner's third claim than to determine whether the claim is procedurally defaulted. Accordingly, the Court will excuse the alleged procedural default.

## II. STANDARD OF REVIEW

Habeas petitioners are entitled to relief only if the state court's adjudication of their claims on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

7

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523, 146 L. Ed.2d 389 (2000) (Justice O'Connor's majority opinion on Part II). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*, 529 U.S. at 413, 120 S. Ct. at 1523. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*, 529 U.S. at 411, 120 S. Ct. at 1522.

## III. DISCUSSION

### A. Sufficiency of the Evidence

The first and second habeas claims allege that there was insufficient evidence to support Petitioner's murder and assault convictions. The Michigan Court of Appeals adjudicated these claims on the merits in the appeal of right and concluded that the trial court properly convicted Petitioner of both second-degree murder and felonious assault.

The relevant question on review of a sufficiency-of-the-evidence claim is

> whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from

8

basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979) (internal citation omitted) (emphasis in original).  Courts must apply this standard "with explicit reference to the substantive elements of the criminal offense as defined by state law."  *Id.*, 443 U.S. at 324 n.16, 99 S. Ct. at 2792 n.16.

"'Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt.'"  *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006) (quoting *United States v. Spearman*, 186 F.3d 743, 746 (6th Cir. 1999)).  Furthermore, the focus is not "on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit."  *Herrera v. Collins,* 506 U.S. 390, 402, 113 S. Ct. 853, 861, 122 L. Ed. 2d 203 (1993) (emphasis in original).

### 1. Second-Degree Murder

Petitioner alleges that the evidence was insufficient to support his murder conviction because there was evidence that the shooting occurred as a result of a struggle between him and Ms. Love.  According to Petitioner, evidence that the gun discharged during the struggle supports a conviction for involuntary manslaughter.

The trial court acknowledged that the shooting occurred during a struggle between Petitioner and Ms. Love, but the court rejected Petitioner's defense that the shooting was accidental.  The Michigan Court of Appeals determined that the trial court, sitting as trier of fact, properly convicted Petitioner of second-degree murder.  The Court of Appeals stated that the evidence was sufficient to find that Petitioner acted with a wanton and wilful disregard that the natural tendency of his behavior was to cause death or great bodily

harm.

### a. Elements of the Offense

The elements of second-degree murder are "(1) a death, (2) the death was caused by an act of the defendant, (3) the defendant acted with malice, and (4) the defendant did not have lawful justification or excuse for causing the death." *People v. Smith*, 478 Mich. 64, 70; 731 N.W.2d 411, 414-15 (2007) (citing *People v. Goecke*, 457 Mich. 442, 464; 579 N.W.2d 868, 878 (1998)). Malice is "the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Goecke*, 457 Mich. at 464; 579 N.W.2d at 878 (citing *People v. Aaron*, 409 Mich. 672, 728; 299 N.W.2d 304, 326 (1980)). "[S]econd-degree murder does not require an actual intent to harm or kill, but only the intent to do an act that is in obvious disregard of life-endangering consequences." *People v. Mayhew*, 236 Mich. App. 112, 125; 600 N.W.2d 370, 379 (1999). It is sufficient if the defendant "intentionally set in motion a force likely to cause death or great bodily harm." *People v. Djordjevic*, 230 Mich. App. 459, 462; 584 N.W.2d 610, 612 (1998) (citing *Aaron*, 409 Mich. at 729; 299 N.W.2d at 327).

Murder is an intentional act requiring malice. Involuntary manslaughter, on the other hand, is "'the killing of another without malice and unintentionally . . . .'" *People v. Herron*, 464 Mich. 593, 604-605; 628 N.W.2d 528, 535 (2001) (quoting *People v. Ryczek* 224 Mich. 106, 110; 194 N.W. 609, 611 (1923)).

### b. Application

Petitioner admitted to family members and to the police that he shot Leona Love, and the parties stipulated that a single gunshot wound to the head caused Ms. Love's

death. Because Petitioner does not allege that he was justified in killing Ms. Love, the only issue is whether he acted with malice.

The relevant evidence at trial established that Petitioner

> armed himself with a loaded handgun and went to the home of [Ms.] Love's friend, LaTonya Champion, looking for Love. [He] waited in the middle of the night for the women to return, pointed the gun at Love shortly after she stepped from Champion's car, and forced her to go with him. . . . [H]e still had the gun in his hand when they arrived at the house they shared and [he] opened the passenger side door of his car, ordering Love to get out. After [he] and Love were inside the house, he grabbed her by the collar. Love slipped and fell and [he] straddled her, still holding the gun. The two struggled for the gun, which discharged and killed Love.

*Morgan*, Mich. Ct. App. No. 217126, at 1-2.

The fact that Petitioner took a loaded gun with him when he left in search of Ms. Love and the fact that he brandished the gun and apparently kept it in his hand during the entire encounter with Ms. Love is some evidence of criminal intent. Straddling Ms. Love and wrestling with her while armed with a loaded handgun set in motion a force likely to cause death or great bodily harm. A rational trier of fact therefore could have concluded from the evidence, taken in the light most favorable to the prosecution, that Petitioner possessed the requisite state of mind to be found guilty of second-degree murder. At a minimum, his conduct demonstrated an intent to act in wanton and willful disregard of the likelihood that the natural tendency of his behavior would cause great bodily harm.

Petitioner claims that there was evidence of an accidental firing, but the trial court rejected this defense, and a reviewing court must defer to the fact finder's resolution of conflicting inferences. *Jackson*, 443 U.S. at 236, 99 S. Ct. at 2793. The state appellate court's conclusion – that the trial court properly convicted Petitioner of second-degree murder – was not contrary to, or an unreasonable application of, *Jackson*.

11

### 2. Felonious Assault

Petitioner alleges that the evidence also was insufficient to support his conviction for felonious assault. He claims that he merely scared Ms. Champion by jumping on her car. Petitioner also claims that he never admitted to pointing the gun at Ms. Champion, nor doing anything else that amounted to an assault and, therefore, the trial court incorrectly determined that his confession corroborated the victim's testimony.

"'The elements of felonious assault are (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery.'" *People v. Chambers*, 277 Mich. App. 1, 8; 742 N.W.2d 610 (2007) (quoting *People v. Avant*, 235 Mich. App 499, 505; 597 N.W.2d 864, 869 (1999)). "A simple assault is either an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery." *People v. Terry*, 217 Mich. App. 660, 662; 553 N.W.2d 23, 25 (1996).

LaTonya Champion testified that Petitioner pointed a gun at her head and told her to "shut up." She claimed that this conduct frightened her. (Tr. Nov. 19, 1998, at 19.) A rational juror could have concluded from this testimony that Petitioner committed an unlawful act with a dangerous weapon and that he intended to injure Ms. Champion or place her in fear of an immediate battery. Although Petitioner's confession did not include an admission that he pointed a gun at Ms. Champion, the trial court was free to credit Ms. Champion's testimony, and

> [a] reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court. *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972

> F.2d 675, 679 (6th Cir. 1992). An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims. *Gall v. Parker*, 231 F.3d 265, 286 (6th Cir. 2000). The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim. *Ibid*.

*Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003).

There was evidence that Petitioner had been drinking alcoholic beverages on the night in question, but "[t]he defense of intoxication will negate the specific intent element of the crime charged [only] if the degree of intoxication is so great as to render the accused incapable of entertaining the intent." *People v. King*, 210 Mich. App. 425, 428; 534 N.W.2d 534, 536 (1995) (citing *People v. Savoie*, 419 Mich. 118, 134; 349 N.W.2d 139 (1984)).[1] The record indicates that Petitioner knew Ms. Love would be staying with Ms. Champion. He then proceeded to Ms. Champion's home and parked down the street so that the women would not know he was there. He subsequently jumped from Ms. Champion's porch onto her car, threatened to kill Ms. Love if the police were called, and dragged Ms. Love to his car. He drove to his house where he straddled Ms. Love while holding a gun. Shortly afterward, he contacted his sister and asked her to check on Ms. Love and to arrange for an ambulance. Next, he drove to his mother's house and walked from there to his brother's house. He called at least two people on the telephone, he confessed to family members that he shot his girlfriend, and he speculated that he would go to prison for the crime.

The evidence indicates that Petitioner knew what he was doing, planned his actions,

---

[1] The voluntary intoxication defense was abolished in 2002, long after Petitioner's trial. *See* Mich. Comp. Laws § 768.37; *People v. Maynor*, 470 Mich. 289, 296; 683 N.W.2d 565, 569 (2004).

and was capable of carrying out his plan. He was not so intoxicated that he was unable to form the requisite intent to place Ms. Champion in fear of being shot if she did not stop screaming. Thus, the state court's conclusion that the evidence was sufficient to support Petitioner's conviction for felonious assault was not contrary to, or an unreasonable application of, *Jackson*.

### B. The Trial Court's Reading of the Preliminary Examination and Petitioner's Waiver of a Jury Trial

The third habeas claim alleges that the trial court erred when it read the transcript of the preliminary examination transcript and then failed to ask Petitioner whether he wanted to waive his right to a jury trial, knowing that the court had read the transcript. Although Petitioner waived his right to a jury trial on the record, he contends that his waiver was involuntary because the trial court failed to revisit the waiver issue after disclosing that it had read the transcript of the preliminary examination.

Petitioner first raised this issue in his motion for relief from judgment, which the trial court denied after concluding that there was no error in securing the waiver of trial by jury and no reversible error in the court's handling of the trial. Neither the Michigan Court of Appeals, nor the Michigan Supreme Court, addressed the merits of Petitioner's claim.

#### 1. Clearly Established Federal Law

The Sixth Amendment to the United States Constitution guarantees the accused in a criminal prosecution the right to a trial by jury. U.S. CONST. amend. VI. This right is applicable to the States, *Duncan v. Louisiana*, 391 U.S. 145, 149, 88 S. Ct. 1444, 1447-48, 20 L.Ed.2d 491 (1968), and may be waived "in the exercise of a free and intelligent choice, and with the considered approval of the court." *Adams v. U.S. ex rel. McCann*, 317 U.S.

14

269, 275, 63 S. Ct. 236, 240, 87 L. Ed. 268 (1942). Whether the waiver of the right to a jury trial was intelligent and competent depends on the unique circumstances of each case. *Id.*, 317 U.S. at 278, 63 S. Ct. at 241.

### 2. Application

Before any testimony was taken at Petitioner's trial, he waived his right to a jury trial in writing and on the record. (Tr. Nov. 19, 1998, at 5-6.) The trial court then informed the parties that it had read the transcript of the preliminary examination when deciding Petitioner's motion to quash the information. The court asked defense counsel whether he had any objection to proceeding with the bench trial despite the fact that the court had read the examination transcript. Defense counsel stated that he had no objection. (*Id*. at 6-7.)

Petitioner claims that the trial court erred by not asking him personally whether he wanted to waive his right to a jury trial after disclosing that the court had read the examination transcript. The record, however, indicates that Petitioner was present at a prior hearing where the trial court acknowledged that it had read the transcript of the preliminary examination. (Tr. July 17, 1998, at 44.) Thus, contrary to what Petitioner alleges, he was informed prior to his waiver of the right to a jury trial that the trial court had read the transcript of the preliminary examination. He also stated that he was freely and voluntarily waiving his right to a jury trial and that no one had threatened him or promised him anything to induce him to waive the right. (Tr. Nov. 19, 1998, at 6.)

Furthermore, Petitioner's claim is based on state law. He relies on *People v. Ramsey*, 385 Mich. 221, 225; 187 N.W.2d 887, 889 (1971), in which the Michigan Supreme Court held that it is reversible error to view the transcript of the testimony taken at the

15

preliminary examination while sitting as the trier of fact where the transcript was not placed in evidence, as provided by Mich. Comp. Laws § 768.26.[2]

The trial court's alleged violation of a state court decision interpreting a state statute is not a basis for habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 480, 116 L.Ed.2d 385 (1991) (explaining that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions" and that a federal habeas court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States"). The rule in *Ramsey*, moreover, does not apply where a judge merely reads a preliminary examination transcript in connection with a defendant's motion to quash; judges are not precluded from sitting as trier of fact in a bench trial where the trial judge did not read or refer to the preliminary examination transcript while sitting as trier of fact and where defense counsel waived the right to a jury trial and failed to move to disqualify the judge. *People v. Dixson*, 403 Mich. 106, 109; 267 N.W.2d 423, 425 (1978).

The transcript of Petitioner's preliminary examination was not admitted in evidence at Petitioner's trial, and there is no indication in the record that the trial court relied on the

---

[2] Section 768.26 states that,

> [t]estimony taken at an examination, preliminary hearing, or at a former trial of the case, or taken by deposition at the instance of the defendant, may be used by the prosecution whenever the witness giving such testimony can not, for any reason, be produced at the trial, or whenever the witness has, since giving such testimony become insane or otherwise mentally incapacitated to testify.

Mich. Comp. Laws § 768.26. The purpose of the statute "is to preserve the rights of confrontation and cross-examination and to prevent prejudice by the use of evidence which is not in the record of the trial." *Ramsey*, 385 Mich. at 224; 187 N.W.2d at 888-89.

transcript during trial. As in *Dixson*, the trial court merely used the preliminary examination transcript to assist it in deciding Petitioner's motion to quash. And, as defense counsel pointed out when questioned about the issue, the testimony at trial was expected to be substantially the same as at the preliminary examination. In addition, the issues and standard of proof at trial were different from what they were in Petitioner's motion to quash, and the court's reading of the examination transcript did not in any way prejudice the defense. (Tr. Nov. 19, 1998, at 7.)

The Court concludes for all these reasons that the trial court's conduct did not deprive Petitioner of his constitutional right to a jury trial, and Petitioner's waiver of the right was voluntary and knowing. Petitioner therefore has no right to relief on the basis of his third claim.

### C. Appellate Counsel

Petitioner's fourth and final claim alleges that he was denied effective assistance of appellate counsel because his appellate attorney declined to raise his third claim in the appeal of right. Petitioner contends that counsel's failure to raise the issue created a conflict of interest between him and his attorney.

The trial court was the only state court to address this issue on the merits. It stated in its order denying Petitioner's motion for relief from judgment that, because there was no error in the decision to accept Petitioner's waiver of a jury trial, appellate counsel did not err in failing or refusing to assert the alleged error.

The Supreme Court has stated that an indigent defendant does not have a constitutional right to compel his appointed attorney to raise all nonfrivolous claims if counsel, as a matter of professional judgment, elects not to raise the claims. *Jones v.*

17

*Barnes*, 463 U.S. 745, 751, 103 S. Ct. 3308, 3312, 77 L.Ed.2d 987 (1983). In fact, "the process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail . . . is the hallmark of effective appellate advocacy." *O'Sullivan v. Boerckel*, 526 U.S. 838, 858, 119 S.Ct. 1728, 1739, 144 L. Ed. 2d 1 (1999) (quotation marks and citations omitted).

To prevail on his claim, Petitioner must show that his appellate attorney's "performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland v. Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).[3] The "deficient performance" prong requires showing that appellate counsel made an objectively unreasonable decision to raise other issues in place of the claim that the defendant wanted to raise. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010). To show "prejudice," the petitioner must demonstrate a reasonable probability that, but for his attorney's failure to raise his claim on appeal, he would have prevailed. *Id.*

As noted above, the trial court was not precluded from sitting as the trier of fact at Petitioner's bench trial, because the court merely reviewed the transcript of the preliminary examination when ruling on Petitioner's motion to quash the information. Petitioner, moreover, was made aware that the court had read the transcript before trial, and the record indicates that his waiver of the right to a jury trial was voluntary and knowing.

Defense counsel's failure to raise Petitioner's third claim in the appeal of right did not amount to deficient performance because the omitted claim was not clearly stronger

---

[3] The *Strickland* standard applies to claims about appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285, 120 S. Ct. 746, 764, 145 L.Ed.2d 756 (2000).

than the sufficiency-of-the-evidence claims that counsel did raise in the appeal of right. And, in light of *Dixson*, there is not a reasonable probability that Petitioner would have prevailed if his appellate attorney had raised his third claim in the appeal of right. Therefore, appellate counsel's omission did not prejudice the defense. Petitioner's third claim lacks merit, and "appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit." *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).

## IV. CONCLUSION

The state courts' adjudications of Petitioner's claims did not result in decisions that were contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts. Accordingly, the petition for writ of habeas corpus [Document No. 1, filed on December 8, 2008] is **DENIED**.

The Court **DECLINES** to issue a certificate of appealability because reasonable jurists would not disagree with the Court's resolution of Petitioner's constitutional claims, nor conclude that the issues presented warrant encouragement to proceed further. *Miller-El v. Cockrell,* 537 U.S. 322, 327, 123 S.Ct. 1029, 1034, 154 L.Ed.2d 931 (2003).

S/Denise Page Hood
Denise Page Hood
Dated: December 14, 2010    United States District Judge

I hereby certify that a copy of the foregoing document was served upon George Morgan, Reg. No. 276743, Mound Correctional Facility 17601 Mound Rd., Detroit, MI 48212 and counsel of record on December 14, 2010, by electronic and/or ordinary mail.

S/William F. Lewis
Case Manager